## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FEDERAL TRADE COMMISSION, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 11-02479 (JLL) |
| v. ) | |
| ) | |
| MILLENNIUM TELECARD, INC., ) | |
| ET AL., ) | |
| ) | |
| Defendants. ) | |

## STIPULATED FINAL ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO DEFENDANTS

On May 2, 2011, plaintiff, the Federal Trade Commission ("FTC"), filed its

Complaint for Permanent Injunction and Other Equitable Relief [D.E. 1]

("Complaint") against defendants Millennium Telecard, Inc.; Millenium Tele Card,

LLC; Coleccion Latina, Inc., also d/b/a Conexion Latina, LLC and Go Mobile,

Inc.; Telecard Center USA, Inc.; and Fadi Salim (collectively, "Defendants")

pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15

U.S.C. § 53(b).

On May 2, 2011, the Court having considered the Complaint, the FTC's *ex*

*parte* motion for a temporary restraining order and preliminary injunction,

declarations, exhibits, and the memorandum of law filed in support thereof, and

being otherwise advised, entered a Temporary Restraining Order ("TRO") against Defendants.

On May 16, 2011, the Court held a preliminary injunction hearing to determine whether a preliminary injunction should issue as to Defendants. Thereafter, Defendants consented to the extension of the TRO until the Court's ruling on the FTC's motion for a preliminary injunction.

On August 16, 2011, the Court entered a Preliminary Injunction [D.E. 45] against Defendants.

The FTC and Defendants hereby stipulate to, and request the Court to enter, this Stipulated Final Order for Permanent Injunction and Monetary Judgment as to Defendants ("Order") to resolve all matters of dispute between the FTC and Defendants in this action.

**IT IS THEREFORE STIPULATED, AGREED, AND ORDERED** as follows:

1.     This Court has jurisdiction over the subject matter of this case, and it has jurisdiction over all parties hereto pursuant to 15 U.S.C. §§ 45(a), 53(b), and 28 U.S.C. §§ 1331, 1337(a), and 1345.

2.     Venue is proper in the District of New Jersey pursuant to 15 U.S.C. § 53(b) and 28 U.S.C. §§ 1391(b) and (c).

3.     The activities alleged in the Complaint are in or affecting "commerce" as

that term is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

4.      The facts that the FTC has stated in its Complaint, if true, would state a claim upon which relief may be granted under Sections 5(a) and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a) and 53(b).

5.      Defendants have entered into this Order freely and without coercion, and they each acknowledge that they have read the provisions of this Order and are prepared to abide by them.

6.      The undersigned, individually and by and through their counsel, have agreed that the entry of this Order resolves all matters of dispute arising from the Complaint in this action, up to the date of entry of this Order.

7.      Defendants waive all rights to seek appellate review or otherwise challenge or contest the validity of this Order, and waive and release any claim they may have against the FTC, its employees, representatives, or agents.

8.      Defendants all agree that this Order does not entitle them individually or collectively to seek or to obtain attorneys' fees as a prevailing party under the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended by Pub. L. 104-121, 110 Stat. 847, 863-64 (1996), and they further waive any rights to attorneys' fees that may arise under said provision of law.

9.      This Order is remedial in nature and no portion of any payments paid herein shall be deemed or construed as payment of a fine, damages, penalty, or punitive

assessment.

10.   Entry of this Order is in the public interest; and

11.   There is no just reason for delaying the entry of this Order.  Pursuant to

Federal Rule of Civil Procedure 54(b), this Order directs the entry of a final

judgment as to all of the claims the FTC alleged in the Complaint against

Defendants, but does not end the claims alleged in Defendants' Third Party

Complaint against the Third-party Defendants [D.E. 37].

## DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

1.   **"Additional Charge"** means any and all charges, other than a per

minute rate, assessed for any use of a Prepaid Calling Card.  The term

"Additional Charge" includes, but is not limited to, maintenance fees,

weekly fees, monthly fees, connection fees, hang-up fees, payphone fees,

cell phone fees, access number fees, and charges, fees, taxes, or

surcharges required or permitted by law or regulation.

2.   **"And"** and **"or"** shall be understood to have both conjunctive and

disjunctive meanings.

3.   **"Asset"** means any legal or equitable interest in, right to, or claim to,

any real, personal, or intellectual property including, but not limited to,

chattel, goods, instruments, equipment, fixtures, general intangibles,

4

effects, leaseholds, contracts, mail or other deliveries, shares or stock, securities, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), cash, trusts, including but not limited to asset protection trusts, and reserve funds or other accounts associated with any payments processed on behalf of any Defendant, including, but not limited to, such reserve funds held by a payment processor, credit card processor, or bank.

4.  **"Assisting others"** includes, but is not limited to, providing any of the following goods or services to another entity:  (1) performing customer service functions, including, but not limited to, charging consumers for products or services, or receiving or responding to consumer complaints; (2) formulating or providing, or arranging for the formulation or provision of, any promotional material; (3) providing names of, or assisting in the generation of, potential customers; (4) performing promotional or marketing services of any kind, including but not limited to, creating, hosting, or maintaining websites, or recruiting affiliates; (5) providing customer relationship management services or products; (6) providing accounting or financial management services; or (7) processing credit and debit card payments.

5.  **"Clear and prominent"** shall mean as follows:

5

A.   In a print advertisement, promotional material (including all Point-of-Sale Materials), or instructional manual, the disclosure shall be in a type size and location sufficiently noticeable for an ordinary consumer to read and comprehend it, in print that contrasts with the background against which it appears.

B.   In an advertisement communicated through an electronic medium (including, but not limited to, television, video, radio, and interactive media such as the Internet and online services), the disclosure shall be presented simultaneously in both the audio and video portions of the advertisement. *Provided, however,* that in any advertisement presented solely through video or audio means, the disclosure may be made through the same means in which the relevant claim is presented.  The audio disclosure shall be delivered in a volume, speed, and cadence sufficient for an ordinary consumer to hear and comprehend it.  The video disclosure shall appear on the screen in a type, size and location, as well as for a duration sufficient for an ordinary consumer to read and comprehend it in a print that contrasts with the background against which it appears.  In addition to the foregoing, in interactive media the disclosure shall also be

6

unavoidable and shall be presented prior to the consumer incurring

any financial obligation.

C.     On the Prepaid Calling Card and its packaging, the disclosure

shall be in a type size and location sufficiently noticeable for an

ordinary consumer to read and comprehend it, in print that contrasts

with the background against which it appears.

D.     The disclosure shall be in understandable language and syntax.

Nothing contrary to, inconsistent with, or in mitigation of the

disclosure shall be used in any advertisement, promotional material,

Prepaid Calling Card, or its packaging.

6.  **"Corporate Defendants"** means Millennium Telecard, Inc.; Millenium

Tele Card, LLC; Coleccion Latina, Inc., also d/b/a Conexion Latina, LLC

and Go Mobile, Inc.; Telecard Center USA, Inc.; and their successors and

assigns.

7.  **"Defendants"** means the Individual Defendant and the Corporate

Defendants, individually, collectively, or in any combination.

8.  **"Document"** is synonymous in meaning and equal in scope to the usage

of the term in Federal Rule of Civil Procedure 34(a), and encompasses

both paper documents and electronically stored information, including:

writings, drawings, graphs, charts, Internet sites, Web pages, Web sites,

electronic correspondence, including e-mail, instant messages and text messages, photographs, audio and video recordings, contracts, accounting data, advertisements (including, but not limited to, advertisements placed on the World Wide Web), FTP Logs, Server Access Logs, USENET Newsgroup postings, World Wide Web pages, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of the term.

9. **"Individual Defendant"** means Fadi Salim.

10. **"Material"** means any information or fact that is likely to affect a consumer's choice of, or conduct regarding, a product or service.

11. **"Person"** means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, government or governmental subdivision or agency, or any other group or combination acting as an entity.

12. **"Plaintiff"** or **"Commission"** or **"FTC"** means the Federal Trade Commission.

13. **"Point-of-Sale Material"** means any poster, sign, bulletin, advertisement, "take one" card, hang-tag, tear-away, or other promotional material that is displayed at a location where a Prepaid Calling Card is sold; such locations include, but are not limited to, stores, kiosks, and vending machines, as well as online points of sale.

14. **"Prepaid Calling Card"** means a card or other means that can be used to make one or more telephone calls that is or are represented as being paid for prior to placing the telephone call.

15. **"Rate"** means the applicable per minute rate for each individual destination served by a Prepaid Calling Card.

16. **"Monitor"** means the Court-appointed Monitor, Nicholas R. Amato, Esq. of Genova, Burns & Giantomasi, and any deputy monitors that were named by the monitor.

17. **"Representatives"** means Defendants' officers, agents, servants, and employees, and any other person or entity in active concert or participation with them who receives actual notice of this Order by personal service or otherwise.

18. **"Talk Minutes"** means the number of calling minutes actually delivered by a Prepaid Calling Card to a particular destination.

## CONDUCT PROHIBITIONS

### I.

**IT IS HEREBY ORDERED** that, in connection with the advertising, distributing, marketing, promotion, offering for sale, or sale of Prepaid Calling Cards, Defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate, independent contractor, distributor, or other device, are **hereby permanently restrained and enjoined from** making, or assisting others in making, any material misrepresentation, either expressly or by implication, including, but not limited to, a misrepresentation concerning the Talk Minutes and/or Rate.

### II.

**IT IS FURTHER ORDERED** that, in connection with the advertising, distributing, marketing, promotion, offering for sale, or sale of Prepaid Calling Cards, Defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate, independent contractor, distributor, or other device, are **hereby permanently restrained and enjoined from** failing to make clear and prominent disclosure of

all material limitations in any advertisement, promotional material, instructional manual, packaging, or Prepaid Calling Card if such advertisement, promotional material, instructional manual, packaging, or Prepaid Calling Card contains any express or implied representation regarding (i) the specific value (*e.g.*, $2) of a Prepaid Calling Card, (ii) the Talk Minutes and/or Rate, or (iii) any fee or charge or the absence thereof (*e.g.*, "No Connection Fees"). Such material limitations include, but are not limited to, the following, if applicable:

A.  The existence and amount of all fees or charges of any type, including, but not limited to, maintenance fees, weekly fees, monthly fees, connection fees, hang-up fees, payphone fees, cell phone fees, access number fees, and when and under what circumstances such fees or charges will apply when using a Prepaid Calling Card;

B.  That the number of advertised Talk Minutes and/or Rates are only available on a single call;

C.  Any limit on the period of time during which the number of advertised Talk Minutes and/or Rates are available; and

D.  When a Prepaid Calling Card expires.

All disclosures required by this Section to be made in any advertisement, promotional material, instructional manual, packaging, or Prepaid Calling Card

shall be made in the same language as that principally used in such advertisement, promotional material, instructional manual, packaging, or Prepaid Calling Card.

## III.

## MONETARY RELIEF

**IT IS FURTHER ORDERED** that:

A.      Judgment in the amount of **two million, three hundred twenty thousand dollars ($2,320,000.00)** is entered in favor of the FTC and against Defendants jointly and severally.

B.      Defendants shall pay the judgment in Section III.A in installments as follows:

1.      Prior to or concurrently with execution of this Order by Defendants and the Commission (but no later than November 4, 2011), Defendants shall cause $500,000.00 of the sum in Section III.A to be transferred to an interest-bearing trust account of Schenck Price Smith & King, LLP ("Escrow Agent"), who shall hold the entire sum for no purpose other than payment to the Commission upon entry of this Order by the Court;

2.      Within three (3) business days of the date of entry of this Order, the Escrow Agent shall transfer the $500,000.00 amount specified in Section III.B.1 ("First Installment") to the FTC in accordance with directions provided by the Commission;

3.     After the First Installment, Defendants shall pay to the Commission the remaining balance of one million, eight hundred twenty thousand dollars ($1,820,000.00) in ten yearly installments of one-tenth (1/10) of the remaining balance plus interest ("Yearly Installments");

4.     The interest due shall be computed on the unpaid balance and from the entry date of this Order pursuant to 28 U.S.C. § 1961; and

5.     The Yearly Installments shall be paid no later than one year from the date of entry of this Order, and every year thereafter.

C.     To effect the payments required by Section III.B, the Court directs that Defendants shall remit such funds to the Commission by certified check(s) or other guaranteed funds payable to the Federal Trade Commission, Financial Management Office, or by wire transfer in accordance with directions provided by counsel for the Commission.

D.     In the event of any default in paying the Yearly Installments, which default continues for forty-five (45) days beyond the due date of payment, the entire remaining balance, together with interest, as computed pursuant to 28 U.S.C. § 1961 from the entry date of this Order, shall immediately become due and payable.

E.     As security for the payments required by Section III.B, Defendants, individually and on behalf of their respective successors, assigns, and all other related persons and entities reflected on the title of the real and/or personal

13

property described in Attachment A to this Order (collectively, the "Related Parties"), hereby grant the Commission liens on and security interests in the real and/or personal property described in Attachment A to this Order, together with all dwelling houses, other structures, improvements, appurtenances, hereditaments, and other rights appertaining or belonging thereto, or which hereafter may be added or attached thereto, and all replacements, substitutions therefore or thereto, and proceeds thereof, whether presently existing or hereafter arising (collectively, the "Collateral").

Defendants represent and acknowledge that the Commission is relying on the material representations that the Defendants and/or the Related Parties are the sole owners in fee simple of the Collateral, title to the Collateral is marketable, and the Collateral currently is not encumbered by any other lien, mortgage, deed of trust, assignment, pledge, security interest or other interest except as set forth in Attachment A to this Order.  Defendants agree, individually and on behalf of the Related Parties, to subordinate any liens, mortgages, deeds of trust, assignments, pledges, security interests or other interests that Defendants, individually or through or on behalf of any Related Parties, have in the Collateral to the liens and security interests granted herein to the Commission.  Defendants further agree, individually and on behalf of the Related Parties, that as of the date on which they sign this Order they shall refrain from transferring, converting, encumbering,

14

selling, assigning, or otherwise disposing of the Collateral, except with the express prior written permission of counsel for the Commission or in accordance with the release provisions of this Order.

Defendants, individually and on behalf of the Related Parties, shall cooperate fully with the Commission and be responsible (at their expense, through counsel reasonably acceptable to the Commission) for preparing, executing, and recording the necessary instruments and documents, including but not limited to financing statements and continuation statements, doing whatever else the Commission deems reasonably necessary or desirable to perfect, evidence, and continue its liens on and security interest in the Collateral, and paying all related fees and costs, including but not limited to attorneys' fees and filing fees. Not later than November 4, 2011, Defendants and the Related Parties shall prepare (at their expense, through counsel reasonably acceptable to the Commission), execute, and deliver to the Commission mortgages, security agreements, UCC-1 financing statements, and other documents in form and substance satisfactory to the Commission, record such documents (at their expense, through counsel reasonably acceptable to the Commission), and take such other steps as the Commission deems necessary or desirable to perfect and evidence its liens on and security interests in the Collateral, and to carry out the purposes of this Order. Upon Defendants' timely and complete satisfaction of the payments required by Section

15

III.B, at Defendants' written request, the Commission agrees to release the liens and security interests granted herein and Defendants shall be responsible for preparing and filing (at their expense) termination or other statements reasonably required in connection therewith.  The Commission shall also promptly release such liens and security interests to the extent necessary to permit the sale or encumbrance of part or all of the Collateral if the net proceeds of such sale or financing are remitted directly to the Commission immediately upon closing of a sale or financing in partial or complete satisfaction of Section III.B of this Order. Defendants shall pay all fees and costs related to such closing and such release, including but not limited to attorneys' fees and filing fees, which may be paid from the gross proceeds of the closing.

Defendants shall be entitled to release property from the lien set forth in this paragraph provided Defendants are able to establish through an independent written appraisal reasonably acceptable to counsel for the Commission that the value of the remaining properties subject to the lien exceeds 125% of the remaining balance owed to the Commission by Defendants.

Defendants shall be responsible for paying all fees and costs relating to the preparation, execution, delivery, filing, recording, continuation, and termination of the liens and security interests granted herein, including but not limited to attorneys' fees and filing fees.

F.     Any funds transferred or paid to the FTC pursuant to this Order shall be deposited into a fund administered by the Commission or its agents to be used for equitable relief, including, but not limited to, redress to consumers, and any attendant expenses for the administration of such equitable relief.  In the event that direct redress to consumers is wholly or partially impracticable or funds remain after the redress is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint.  Any funds not used for such equitable relief shall be deposited to the United States Treasury as disgorgement.  Defendants shall have no right to challenge the Commission's choice of remedies under this Section.

G.     Defendants shall have no right to contest the manner of distribution chosen by the Commission.  No portion of any payment under the Judgment herein shall be deemed a payment of any fine, penalty, or punitive assessment.

H.     Defendants relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law.  Defendants shall make no claim to or demand for return of the funds, directly or indirectly, through counsel or otherwise.

I.     Defendants agree that the facts as alleged in the Complaint filed in this action shall be taken as true without further proof in any bankruptcy case or subsequent civil litigation pursued by the Commission to enforce its rights to any

17

payment or money judgment pursuant to this Order, including but not limited to a nondischargeability complaint in any bankruptcy case. Defendants further stipulate and agree that the facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and that this Order shall have collateral estoppel effect for such purposes. This Section [Section III.I] is not, and is not intended to be, construed as an admission by Defendants of the facts alleged in the Complaint with respect to any claims or demands by any third parties.

J.      In accordance with 31 U.S.C. § 7701, Defendants are hereby required, unless they have done so already, to furnish to the Commission their taxpayer identification numbers and/or social security numbers, which shall be used for the purposes of collecting and reporting on any delinquent amount arising out of Defendants' relationship with the government.

## IV.

## COMPLETION OF MONITORSHIP

**IT IS FURTHER ORDERED** that the Monitor is directed to, within thirty (30) business days of this Order, file and serve on the parties a final request for fees and expenses. Upon this Court's Order for final payment from the assets of the Corporate Defendants, the monitorship shall terminate.

## V.

## LIFTING OF ASSET MONITORING, PRESERVATION, AND STAY OF ACTIONS PROVISIONS

**IT IS FURTHER ORDERED** that the asset monitoring and preservation provisions set forth in Section VIII of the Preliminary Injunction entered by this Court on August 16, 2011 [D.E. 45] shall be lifted to the extent necessary to complete the payment required under Section III.B.1 of this Order, and upon completion of such payment, shall be lifted permanently as to Defendants. The stay of actions against corporate defendants set forth in Section XIII of the Preliminary Injunction entered by this Court on August 16, 2011 [D.E. 45] shall be lifted when the asset freeze and monitorship have both terminated in accordance with this Order.

## VI.

## MONITORING BY THE DEFENDANTS

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of this Order, Defendants, in connection with the advertising, distributing, marketing, promotion, offering for sale, or sale of Prepaid Calling Cards, are hereby permanently restrained and enjoined from failing to:

A.   Obtain contact information from all distributors, sub-distributors, or retailers who purchase Prepaid Calling Cards directly from Defendants. In the case of a natural person, Defendants shall obtain

the first and last name, physical address, and telephone number of
any such distributor or retailer. In the case of a business entity,
Defendants shall obtain the first and last name, physical address, and
telephone number of the natural person who owns, manages, or
controls the distributor or retailer;

B. Direct all distributors or sub-distributors who purchase Prepaid
Calling Cards directly from Defendants to: (i) promptly provide
Point-of-Sale Materials that comply with the terms and conditions of
this Order, when such materials are provided by Defendants, to the
sub-distributors of the distributors or retail accounts of the sub-
distributors; and (ii) instruct their sub-distributors or retail accounts
to remove expired Point-of-Sale Materials on a prompt and timely
basis, or, in the case of sub-distributors, to direct the sub-distributors
to instruct their retail accounts to remove expired Point-of-Sale
Materials on a prompt and timely basis;

C. Direct all retailers who purchase Prepaid Calling Cards directly from
Defendants to remove expired Point-of-Sale Materials on a prompt
and timely basis;

D. Establish, implement, and thereafter maintain a procedure for
disseminating new Point-of-Sale Materials and Prepaid Calling

Cards that comply with the provisions of this Order ("Compliant

Materials") to all distributors, sub-distributors, and retailers of

Defendants' Prepaid Calling Cards before the prior Compliant

Materials expire;

E.   Establish, implement, and thereafter maintain a procedure for

directing that all retailers of Defendants' Prepaid Calling Cards (i)

display, in a visible and conspicuous manner, new Compliant

Materials at the time they receive them; and (ii) discard expired

Compliant Materials at the time they receive the new Compliant

Materials;

F.   To the extent permitted by state or federal law, terminate,

immediately, any direct distributor or sub-distributor of Defendants'

Prepaid Calling Cards that Defendants reasonably conclude has

refused to (i) promptly offer Point-of-Sale Materials that comply with

the terms and conditions of this Order to such distributor's sub-

distributors or retail accounts, (ii) direct such distributor's retail

accounts to remove expired Point-of-Sale Materials, or (iii) direct the

sub-distributors of such distributor to direct the sub-distributors' retail

accounts to remove expired Point-of-Sale Materials;

G.   To the extent permitted by state or federal law, terminate,

21

immediately, any retailer that purchases Prepaid Calling Cards directly from Defendants where Defendants reasonably conclude that such retailer has refused to promptly discard expired Point-of-Sale Materials;

H.   Establish, implement, and thereafter maintain a procedure for routinely monitoring the Talk Minutes, Rates, and/or Additional Charges provided by and/or assessed by the applicable telecommunications carriers ("Carriers") to ensure that there are no Additional Charges, and the Talk Minutes and/or Rates are accurately disclosed to consumers on Prepaid Calling Cards or promotional material for such cards throughout the time period they are in effect, including, but not limited to:

1.   obtaining in writing from the applicable Carrier the number of Talk Minutes, Rates, and/or Additional Charges (for example, a "rate deck") prior to the dissemination of any Compliant Materials and the date up to which the number of Talk Minutes and/or Rates will be in effect;

2.   testing a random sample of Prepaid Calling Cards to confirm that there are no Additional Charges, and the number of Talk Minutes and/or Rates represented to consumers are actually

delivered;

3.   obtaining and analyzing a random sample of call detail records from the Carrier to confirm that there are no Additional Charges, and the number of Talk Minutes and/or Rates represented to consumers are actually delivered;

4.   making best efforts to obtain in writing from the Carrier any changes to the number of Talk Minutes, Rates, and/or Additional Charges, and the time period those changes are in effect; and

5.   maintaining complete and accurate written records of all of the foregoing, including any records of discrepancies between the number of Talk Minutes, Rates, and/or Additional Charges represented to consumers and what is actually delivered and/or assessed by the Carrier.

I.   Take reasonable steps to remedy the failure of any Carrier to provide accurate, sufficient, or timely information necessary for Defendants to comply with the monitoring provisions of this Order, including, but not limited to, terminating the relationship with any such Carrier to the extent permitted by state or federal law;

J.   Establish, implement, and thereafter maintain a procedure for ensuring

23

that Compliant Materials and website representations: (i) reflect the accurate number of Talk Minutes and/or Rates; and (ii) contain clear and prominent disclosures of all Material Limitations;

K.  Notify the Carrier in writing of any complaints Defendants receive, through any source, regarding (i) the alleged failure of a Prepaid Calling Card to provide the advertised number of Talk Minutes and/or Rates or (ii) the imposition on a consumer of any Additional Charges;

L.  Make best efforts to obtain from the Carrier copies or other written notice of any complaints the Carrier receives, through any source, regarding (i) the alleged failure of a Prepaid Calling Card to provide the advertised number of Talk Minutes and/or Rates or (ii) the imposition on a consumer of any Additional Charges; and

M.  Make best efforts to obtain from the Carrier a written explanation in response to all such complaints.

## VII.

## ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of receipt of this Order:

A.      Each Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 5 years after entry of this Order, the Individual Defendant for any business that he is the majority owner or directly or indirectly controls, and each Corporate Defendant, must deliver a copy of this Order to:  (1) all principals, officers, directors, and managers; (2) all employees, agents, and representatives who participate in the advertising, distributing, marketing, promotion, offering for sale, or sale of Prepaid Calling Cards; (3) telecommunications carriers that do business with Defendants related to the subject matter of the Order; (4) all distributors, sub-distributors, or retailers who purchase Prepaid Calling Cards directly from any Defendant; and (5) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within 7 days of entry of this Order for current personnel.  To all others, delivery must occur before they assume their responsibilities.

C.     From each of the following individuals or entities to which a Defendant

delivered a copy of this Order, that Defendant must obtain, within 30 days, a

signed and dated acknowledgment of receipt of this Order:  (1) all principals,

officers, directors, and managers; (2) all employees, agents, and representatives

who participate in the advertising, distributing, marketing, promotion, offering for

sale, or sale of prepaid calling cards; and (3) any business entity resulting from any

change in structure as set forth in the Section titled Compliance Reporting.

## VIII.

## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendants make timely submissions to

the Commission:

A.     180 days after entry of this Order, each Defendant must submit a compliance

report, sworn under penalty of perjury.

1.     Each Defendant must:  (a) designate at least one telephone number

and an email, physical, and postal address as points of contact, which

representatives of the Commission may use to communicate with

Defendant; (b) identify all of that Defendant's businesses by all of

their names, telephone numbers, and physical, postal, email, and

Internet addresses; (c) describe the activities of each business,

including the products and services offered, the means of advertising,

marketing, and sales, and the involvement of any other Defendant (which the Individual Defendant must describe if he knows or should know due to his own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission;

2.   Additionally, the Individual Defendant must:  (a) identify all telephone numbers and all email, Internet, physical, and postal addresses, including all residences; (b) identify all titles and roles in all business activities, including any business for which the Defendant performs services whether as an employee or otherwise and any entity in which the Defendant has any ownership interest; and (c) describe in detail the Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.   For 10 years following entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.    Each Defendant must report any change in:  (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Defendant has any ownership interest in or directly or indirectly controls that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.    Additionally, the Individual Defendant must report any change in:  (a) name, including aliases or fictitious names, or residence address; or (b) title or role in any business activity, including any business for which the Defendant performs services whether as an employee or otherwise and any entity in which the Defendant has any ownership interest, and identify its name, physical address, and Internet address, if any.

C.    Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or any similar proceeding by or against such Defendant within 14 days of its filing.

D.    Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the

28

United States of America that the foregoing is true and correct. Executed

on:_____" and supplying the date, signatory's full name, title (if applicable), and

signature.

E.     Unless otherwise directed by a Commission representative in writing, all

submissions to the Commission pursuant to this Order must be emailed to

DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:

Associate Director for Enforcement, Bureau of Consumer Protection, Federal

Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580.  The

subject line must begin:  FTC v. Millennium Telecard, Inc., Millenium Tele Card,

LLC, Coleccion Latina, Inc., Telecard Center USA, Inc., and Fadi Salim, FTC No.

X110038.

## IX.

## RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendants must create certain records

for 20 years after entry of the Order, and retain each such record for 5 years.

Specifically, Corporate Defendants engaged in any acts or practices subject to this

Order and the Individual Defendant for any business in which he is a majority

owner or directly or indirectly controls, must maintain the following records:

A.     Accounting records showing the revenues from all goods or services sold, all

costs incurred in generating those revenues, and the resulting net profit or loss;

29

B.     Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name, addresses, and telephone numbers; job title or position; dates of service; and, if applicable, the reason for termination;

C.     Customer files showing the names, addresses, telephone numbers, dollar amounts paid, and the quantity and description of goods or services purchased, to the extent such information is obtained in the ordinary course of business;

D.     Complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

E.     Copies of all sales scripts, training materials, and advertisements or other promotional materials, including but not limited to, Point-of-Sale Materials, newspaper advertisements, radio or television advertisements, websites, e-mail messages, instant messages, Internet "pop-up" advertisements, Internet banner advertisements.  The foregoing documents must be maintained in the size and color in which they were created, disseminated, or used;

F.     Exemplars of all types, brands, and versions of Prepaid Calling Cards sold (both the front and back of each card, as well as any "hang-tag" or "tear-off" portion of such cards), in the size and color and in which each card was sold;

G.     Copies of all rate decks, call logs, and other documents that reflect the advertised Talk Minutes and/or Rates, any Additional Charges, and the number of

Talk Minutes and/or Rates and Additional Charges actually delivered or imposed

on consumers, for each Prepaid Calling Card sold;

H.      Documents sufficient to disclose the date on which the documents required

to be maintained under sub-paragraphs E, F, and G of this Section were issued or

created; and

I.      All records necessary to demonstrate full compliance with each provision of

this Order, including all submissions to the Commission.

## X.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring

Defendants' compliance with this Order, including any failure to transfer any

assets as required by this Order:

A.      Within 14 days of receipt of a written request from a representative of the

Commission, each Defendant must:  submit additional compliance reports or other

requested information, which must be sworn under penalty of perjury; appear for

depositions; and produce documents, for inspection and copying.  The Commission

is also authorized to obtain discovery, without further leave of court, using any of

the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including

telephonic depositions), 31, 33, 34, 36, 45, and 69, provided that, Defendants, after

attempting to resolve a dispute without court action and for good cause shown,

may file a motion with this Court seeking an order including one or more of the protections set forth in Rule 26(c).

B.      For matters concerning this Order, the Commission is authorized to communicate directly with each Defendant. Defendant must permit representatives of the Commission to interview any employee or other person affiliated with any Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XI.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this

matter for purposes of construction, modification, and enforcement of this Order.

**IT IS SO ORDERED:**

_____

The Honorable Jose L. Linares
UNITED STATES DISTRICT JUDGE
DATED: January 26, 2012

33

IT IS SO STIPULATED:

ROBERTO ANGUIZOLA
KATHLEEN DAFFAN
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW, H-286
Washington, DC 20580
Tel.: (202) 326-3284 (Anguizola)
      (202) 326-2727 (Daffan)
E-mail: ranguizola@ftc.gov
        kdaffan@ftc.gov
Fax: (202) 326-3395
Attorneys for Plaintiff Federal Trade
Commission

FADI SALIM

Millennium Telecard, Inc.
By: Fadi Salim, President

Millenium Tele Card, LLC
By: Fadi Salim, President

Coleccion Latina, Inc.
By: Fadi Salim, Chief Executive Officer

Telecard Center USA, Inc.
By: Fadi Salim, President

34

JEFFREY T. LaROSA
MICHAEL J. MAROTTE
SCHENCK PRICE SMITH & KING, LLP
220 Park Avenue, PO Box 991
Florham Park, NJ 07932
Tel:  (973) 539-1000
Fax:  (973) 540-7300
Email:  jtl@spsk.com
          mjm@spsk.com
**Attorneys for Defendants Millennium
Telecard, Inc., Millenium Tele Card,
LLC, Coleccion Latina, Inc., Telecard
Center USA, Inc., and Fadi Salim**

Attachment A

| Property Address | Legal Description | Owner | Encumbrances | Encumbrance Holder(s) | Encumbrance Holder Address |
|---|---|---|---|---|---|
| 48 Continental Circle, Totowa, NJ | Lot 65, Block 9.10 | Fadi Salim | $643,446.00 | BAC Home Loans | 900 Samoset Drive, Newark, DE 19713-6002 |
| 531-535 Lexington Ave., Clifton, NJ | Lots 10 & 12, Block 7.08 | Fadi Salim | $1,402,229.00 | Mariner's Bank | 935 River Road Edgewater, New Jersey 07020 |
| 635 Lexington Ave., Clifton, NJ | Lot 19, Block 2.12 | Fadi Salim | $244,892.00 | Crown Bank | 715 Route 70 Brick, New Jersey 08723 |
| 594 Lexington Ave., Clifton, NJ | Lot 1, Block 7.04 | Fadi Salim | $395,192.00 | Joseph and Anna Simon | 215 Quarry Road, Wantage, New Jersey 07461 |
| 590 Lexington Ave., Clifton, NJ | Lot 88, Block 7.04 | Michael Realty Investments, LLC | $300,000.00 | 590 Lexington Avenue Realty, LLC | 133 Terrace Avenue, Hasbrouck Heights, NJ 707604 |